Opinion issued July 20, 2006








     





In The
Court of Appeals
For The
First District of Texas




NO. 01-04-00872-CV




YOGI EVANS AND JIM EVANS, Appellants

V.

SAMUEL D. ADAMO, Appellee




On Appeal from the 113th District Court
Harris County, Texas
Trial Court Cause No. 2003-42991




MEMORANDUM OPINION
          Appellants, Yogi Evans and Jim Evans, appeal from a summary judgment
rendered in favor of appellee, Samuel D. Adamo. The trial court’s judgment, signed
July 19, 2004, granted summary judgment for Adamo, ordered that Yogi and Jim take
nothing by their suit, and assessed costs against Yogi and Jim. In three issues on
appeal, Yogi and Jim assert that (1) the “sole proximate cause” defense does not
apply to this case because they were not convicted of a crime; (2) an attorney’s
“improper legal advice” that results in a client’s being arrested and indicted can be
the basis of a legal malpractice claim even if the conduct recommended was non-criminal; and (3) they produced some evidence of damages by introducing evidence
of the attorney’s fees that they had incurred. We conclude that the trial court properly
granted Adamo’s no-evidence motion for summary judgment because Yogi and Jim
failed to produce any evidence regarding whether Adamo breached the standard of
care owed by Adamo. We affirm.Background
          Yogi and Jim were relatives of Eddie Evans, who was criminally charged with
forgery for having presented forged checks to a check-cashing business owned by
Fatimah Ghanbarzadeh. Yogi had a pre-existing business relationship with
Ghanbarzadeh. According to Yogi, Ghanbarzadeh called him more than 10 times to
help her get her money that had been taken by Eddie through forgery because she
knew that Yogi and Eddie were related. Yogi and Jim wanted to pay restitution to her
and to request that she drop the charges against Eddie. Yogi and Jim contacted
Adamo to make sure that it was legal to approach Ghanbarzadeh. Adamo was
Eddie’s attorney. According to Yogi, Adamo assured Yogi and Jim that it was legal
to offer to assist Ghanbarzadeh to recover the money. Adamo also told Jim that if
Ghanbarzadeh agreed to restitution, it needed to be in writing. Adamo’s assistant
typed up an affidavit for Ghanbarzadeh to sign.
          Yogi, Jim, and two relatives went to Ghanbarzadeh’s business to speak with
her about the charges against Eddie. Because of a complaint from Ghanbarzadeh
regarding Eddie’s relatives’ attempting to persuade her to drop the case against Eddie,
police officers monitored and recorded the conversation between Ghanbarzadeh and
Yogi, Jim, and the other two relatives. The transcript of the conversation was
introduced into the record, but the speakers were identified only as “Witness 1,”
“Witness 2,” “Witness 3,” “Witness 4,” and “Witness 5.” During the course of the
conversation, which lasted over 90 minutes, Eddie’s relatives encouraged
Ghanbarzadeh to tell the district attorney that she had mistakenly identified Eddie as
the person who had presented the forged check to her for cashing. Eddie’s relatives
told Ghanbarzadeh that they had encountered a similar situation once before, in
California, where they had paid $100,000 in restitution on behalf of a family member,
but the State of California had continued to pursue charges. Eddie’s relatives tried
to secure a promise from Ghanbarzadeh that, if they paid restitution, she would say
that she had mistakenly identified Eddie. Eddie’s relatives specifically conditioned
an offer to pay Ghanbarzadeh on her “go[ing] to court and say[ing] it’s not [Eddie].” 
After continuing to try to convince Ghanbarzadeh that they would pay her only after
she had retracted her statements made about Eddie, one of Eddie’s relatives explained
that he had shot a man “that tried to cheat me” and that he had “put four bullets in
him, and he’s hurt for the rest of his life.” After having listened to the conversation,
the officers arrested Yogi, Jim, and their two relatives. Both Yogi and Jim were
indicted for witness-tampering.


 Later, the charges were dismissed for reasons not
shown by the record before us.
          Yogi and Jim filed this suit against Adamo, alleging legal malpractice as the
sole theory of recovery. After having answered the suit, Adamo filed a motion for
summary judgment. Adamo moved for traditional summary judgment, asserting that
the evidence conclusively established the affirmative defense of “sole proximate
cause” because Yogi’s and Jim’s criminal conduct, and not any alleged malpractice,
was the sole proximate cause of their injuries. In the alternative, Adamo asserted that
the advice that he had given Yogi and Jim was proper, that no criminal violation
occurred, and that the sole proximate cause of their damages was the prosecutor’s
decision to arrest and to indict them. Adamo also moved for summary judgment by
asserting that there was no evidence that Adamo owed Yogi and Jim any duty, that
Adamo had breached any duty owed to Yogi and Jim, that Adamo’s alleged breach
of any legal duty owed to Yogi and Jim had proximately caused them to sustain or to
incur any damages, or that Yogi and Jim had sustained or incurred any recoverable
damages as a result of Adamo’s alleged breach. The trial court granted summary
judgment for Adamo, but did not specify the grounds upon which it relied.Summary Judgment
          We review summary judgments de novo. Valence Operating Co. v. Dorsett,
164 S.W.3d 656, 661 (Tex. 2005). When, as here, a summary judgment does not
specify the grounds on which it was granted, we will affirm the judgment if any one
of the theories advanced in the motion is meritorious. Joe v. Two Thirty Nine Joint
Venture, 145 S.W.3d 150, 157 (Tex. 2004). After adequate time for discovery, a
party may move for summary judgment on the ground that there is no evidence of one
or more essential elements of a claim or defense on which the opposing party has the
burden of proof. Tex. R. Civ. P. 166a(i). In a no-evidence motion for summary
judgment, the movant must specifically state the elements as to which there is no
evidence. Id. The trial court must grant the motion unless the nonmovant produces
summary judgment evidence raising a genuine issue of material fact. Id. We review
a no-evidence summary judgment by construing the record in the light most favorable
to the nonmovant and disregarding all contrary evidence and inferences. Patriacca
v. Frost, 98 S.W.3d 303, 306 (Tex. App.—Houston [1st Dist.] 2003, no pet.). A trial
court improperly renders a no-evidence summary judgment if the nonmovant presents
more than a scintilla of probative evidence to raise a genuine issue of material fact. 
Greathouse v. Alvin Indep. Sch. Dist., 17 S.W.3d 419, 423 (Tex. App.—Houston [1st
Dist.] 2000, no pet.). More than a scintilla of evidence exists when the evidence
“would enable reasonable and fair-minded people to differ in their conclusions.” 
Forbes Inc. v. Granada Biosciences, Inc., 124 S.W.3d 167, 172 (Tex. 2003).
          Adamo’s no-evidence motion for summary judgment stated that there was no
evidence of any of the elements of Yogi and Jim’s claim for legal malpractice: duty,
breach, causation, or damages. See Alexander v. Turtur & Assocs., Inc., 146 S.W.3d
113, 117 (Tex. 2004) (stating elements of legal malpractice). In Texas, lawyers are
held to the standard of care that would be exercised by a reasonably prudent attorney
in the same or similar circumstances. See Zenith Star Ins. Co. v. Wilkerson, 150
S.W.3d 525, 530 (Tex. App.—Austin 2004, no pet.) (citing Cosgrove v. Grimes, 774
S.W.2d 662, 664–65 (Tex. 1989)). Thus, in a legal malpractice case, expert testimony
is generally required to prove the standard of care and the breach of that standard. 
See id. at 530 (standard and breach); Longaker v. Evans, 32 S.W.3d 725, 735 (Tex.
App.—San Antonio 2000, pet. withdrawn) (standard); Onwuteaka v. Gill, 908 S.W.2d
276, 281 (Tex. App.—Houston [1st Dist.] 1995, no writ) (breach).
          The affidavits introduced by Yogi and Jim are silent regarding whether Adamo
breached the standard of care. Yogi’s affidavit established that Adamo prepared a
document for Ghanbarzadeh to sign and that Adamo represented that it was legal to
approach Ghanbarzadeh. Jim’s affidavit stated that Adamo told him that any
agreement with Ghanbarzadeh needed to be in writing and that Adamo’s assistant
prepared the affidavit for Jim to present to Ghanbarzadeh. Jim said that he “assumed
the prosecution ok’d” his talking to Ghanbarzadeh because Adamo was working with
the prosecution to get Eddie’s charges dropped.
          The record contains no evidence, expert or otherwise, that indicates whether
Adamo breached the standard of care that would be exercised by a reasonably prudent
attorney in the same or similar circumstances.


 The trial court therefore properly
granted the no-evidence motion for summary judgment in favor of Adamo. Because
the trial court properly granted summary judgment on the ground that there was no
evidence on the element of breach of the standard of care in Yogi’s and Jim’s
malpractice claim, we do not address Yogi and Jim’s issues attacking other possible
grounds for summary judgment. See Two Thirty Nine Joint Venture, 145 S.W.3d at
157.
Conclusion
          We affirm the judgment of the trial court.
 

                                                             Elsa Alcala
                                                             Justice

Panel consists of Justices Keyes, Alcala, and Bland.